IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| A.M.M., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-24-1318-STE |
| ) | |
| FRANK BISIGNANO, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

I.     PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 14-29). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.  THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 7, 2021, the amended alleged disability onset date. (TR. 17). At step two, the ALJ determined Plaintiff suffered from severe: major depressive disorder; generalized anxiety disorder; anorexia nervosa; and PTSD (TR. 17). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 17).

At step four, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: She can understand, remember, and apply simple, multistep instructions, make simple work-related decisions, and concentrate and persist for extended periods in order to complete simple, multistep work tasks with routine supervision. She can interact with and respond appropriately to others in a routine work setting, incidental to the work being performed. However, she would need to avoid workrelated interaction with the general public. She can adapt to a routine work setting where changes are infrequent, well-explained, and introduced gradually. She can recognize and avoid normal workplace hazards.

(TR. 20).

With these limitations, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (TR. 27). As a result, the ALJ presented the RFC to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 58). Given the limitations, the VE identified three jobs from the

Dictionary of Occupational Titles that Plaintiff could perform. (TR. 59). The ALJ then adopted the VE's testimony and concluded, at step five, that Plaintiff was not disabled based on her ability to perform the identified jobs. (TR. 29).

### III. ISSUE PRESENTED

On appeal, Plaintiff alleges error in the ALJ's failure to: (1) properly evaluate medical opinions from licensed professional counselor, Alison Squire; (2) account for all relevant evidence when determining Plaintiff's mental RFC; and (3) properly evaluate Plaintiff's subjective statements. (ECF No. 12:4-15, 21:2-11).

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. ERROR IN THE ALJ'S EVALUATION OF MS. SQUIRE'S OPINION

Plaintiff alleges legal error in the ALJ's evaluation of a medical opinion from Plaintiff's licensed professional counselor, Alison Squire. (ECF No. 12:4-10). The Court agrees.

### A. Ms. Squire's Opinion and the ALJ's Related Evaluation

On January 18, 2024, Ms. Squire, who had who had treated Plaintiff from 2021-2024, authored a Medical Statement of Ability to do Work-Related Activities (Mental) regarding Plaintiff's mental health and limitations. *See* TR. 3268-3270. In the statement, Ms. Squire stated that Plaintiff currently met the criteria for diagnoses of Anorexia Nervosa, Generalized Anxiety Disorder and Major Depressive Disorder. (TR. 3269). Ms. Squire then opined that Plaintiff was "markedly" limited in her abilities to: (1) make judgments on complex work-related decisions and (2) respond appropriately to usual work situations and to changes in a routine work setting. (TR. 3268-3269). Ms. Squire provided the following explanation in support of her first opinion:

> Due to [Plaintiff's] ongoing diagnoses[,] areas such as concentration have been impacted. Her ability to focus, concentrate, and follow through with some tasks have been impaired. She becomes overwhelmed, experiences panic attacks, and challenging intrusive thoughts.

(TR. 3268).

In support of her second opinion, Ms. Squire stated:

> [Plaintiff] becomes overwhelmed in social situations as well as interactions with acquaintances and those she does not know. Additionally, [Plaintiff's] ability to adjust to unexpected changes and challenges are impacted.

(TR. 3269).

The ALJ acknowledged the opinions, but rejected them as unpersuasive as "lacking in support . . . [as] not reflected in her medical records" and "inconsistent with other evidence in the record." (TR. 25).

### B. The ALJ's Duty to Evaluate Medical Opinions

The Social Security regulations define a "medical opinion" as "a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [a claimant] ha[s] one or more impairment-related limitations or restrictions" in her abilities to:

- Perform physical demands of work activities;
- Perform mental demands of work activities;
- Perform other demands of work, such as seeing, hearing, or using other senses; and
- Adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1513a(b)(2), 404.1520c. In doing so, the ALJ need only articulate how persuasive he finds the medical opinion. 20 C.F.R. § 404.1520c(b). Persuasiveness is determined primarily by an opinion's supportability and consistency, and the ALJ must explain how he considered those factors. 20 C.F.R. § 404.1520c(b)(2) & (c)(1)-(2). "Supportability" refers to the ALJ examining the medical source's own medical evidence and supporting explanations to determine whether the source's opinions (based on the evidence) are persuasive. 20 C.F.R. § 404.1520c(c)(1). "Consistency" involves comparing the medical source's opinion with other medical

evidence and prior administrative finding to see whether the opinions and evidence are consistent. 20 C.F.R. § 404.1520c(c)(2).

In addition, the ALJ may, but is not required to, discuss other considerations that may bear on the persuasiveness of a medical opinion, such as the relationship of the source to the claimant, the source's area of specialization, and other factors such as the source's familiarity with the disability program's policies and evidentiary requirements. *See* 20 C.F.R. § 404.1520c(c)(3)-(5). Finally, the ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review[1] and supported by substantial evidence.[2]

### C.   Error in the ALJ's Evaluation of Ms. Squire's Opinion

In evaluating Ms. Squire's opinions, the ALJ addressed the factors of consistency and supportability, as required by the regulations. *See supra*, *see* TR. 25-26. But the Court finds neither explanation supported by substantial evidence.

#### 1.   The "Consistency" Factor

The Court first finds error in the ALJ's evaluation of Ms. Squire's opinion as consistent with her own internal records. As stated, "consistency" involves comparing the medical source's opinion with other medical evidence and prior administrative findings to see whether the opinions and evidence are consistent. 20 C.F.R. § 404.1520c(c)(2). Here, the ALJ found that Ms. Squire's opinions were "inconsistent with other evidence in the record." (TR. 26). Yet, in support of this "rejection" the ALJ noted that Plaintiff had

---

[1] *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

[2] *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004).

reported "overwhelm[ing] and intrusive thoughts in records from the Eating Recovery Centers records from August 17 through October 9, 2021." (TR. 27). Indeed, records from the Eating Recovery Centers noted Plaintiff suffered from:

- anxiety and intrusive thoughts;
- self-deprecating thoughts;
- "daily passive suicidal ideation;"
- self-harming behaviors, sometimes daily, including cutting (over 100 times), burning herself (over 50 times), hitting herself (maybe 10 times), purposefully banged her head (multiple times), purposefully driving recklessly (about 50 times), and attempted hanging herself;
- poor concentration;
- inattentiveness;
- panic attacks "daily for the last few months;"
- poor memory;
- distractibility in memory and attention;
- a preoccupation in thoughts with eating disorder behaviors;
- cognitive distortions; and
- moderate to severe levels of obsessive thinking.

(TR. 449, 452, 455, 457, 464, 479, 488, 489, 494, 497, 498, 501, 505, 509, 791, 795, 804, 806, 810, 825). This recitation of the records from the Eating Recovery Centers is by no means exhaustive as the records are quite extensive. Even so, the records noted are clearly consistent with Ms. Squire's opinions that Plaintiff suffered from an impaired ability to concentrate and focus, as well as becoming overwhelmed and experiencing panic attacks, and challenging intrusive thoughts. *See supra*. The Court specifically notes

that although the ALJ found that Plaintiff "complained of panic attacks on only five occasions, not an ongoing basis," the record suggests otherwise, as Plaintiff reported at one point suffering "daily" panic attacks for "a few months." *See* TR. 458.

Again, although facially, the ALJ provided rationales in support of rejecting Ms. Squire's opinions as not consistent with the other evidence of record, a review of those records suggest otherwise and on this basis remand is warranted. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (reversal warranted, in part, because the ALJ's reasons for completely rejecting a medical opinion were not supported by substantial evidence).

### 2. The Supportability Factor

The Court also finds error in the ALJ's "supportability" analysis when evaluating Ms. Squire's opinion. Regarding this factor, i.e., whether Ms. Squire's records supported her findings concerning Plaintiff's "marked" limitations, the ALJ cited:

- A May 18, 2023 report from Plaintiff regarding "pacing herself in getting things done;"

- A June 13, 2023 report from Plaintiff that she was "able to get a few things done around the house;" and

- Notations from September 21 and 29, 2023 stating that Plaintiff "referenced things that she felt like she needed to get [d]one before her son's delivery."

(TR. 26). Presumably, the ALJ relied on Plaintiff's reports of "getting things done" as a basis to find that Ms. Squire's records did not support her findings that Plaintiff's ability to "follow through with some tasks have been impaired." But the ALJ's rationales address only a portion of Ms. Squire's opinion—Plaintiff's ability to follow through with some tasks.

Regarding the remaining pieces of Ms. Squire's opinion—that Plaintiff becomes overwhelmed in social situations and experiences panic attacks and challenging intrusive thoughts—the ALJ acknowledged three instances wherein Plaintiff reported being "overwhelmed" and one time when Plaintiff reported having "intrusive thoughts." (TR. 26). But the ALJ never explains how these findings in Ms. Squire's records would not support her opinions that Plaintiff "becomes overwhelmed, experiences panic attacks, and challenging intrusive thoughts"—they clearly would. In addition to these instances acknowledged by the ALJ, Ms. Squire's notes reveal numerous other notations in her records which support her opinion.

For example, on March 25, 2021, Plaintiff reported minimal improvement in anxious thoughts, and reported "no significant changes" in her thought process through November 17, 2021, when she again affirmed "minimal improvement in anxious thoughts." (TR. 3312). Thereafter, Plaintiff continued weekly to report "no" significant changes in her thought processes, affirming that she continued to suffer anxious thoughts. (TR. 3313). And as noted by the ALJ, on November 29, 2021, Ms. Squire noted Plaintiff was "having some intrusive thoughts, but does not currently have a plan." (TR. 3314). A "plan" presumably referred to Plaintiff having a plan to commit suicide, as was evidenced by Ms. Squire's notes on December 8th, 15th and 23rd, 2021, when she noted that Plaintiff was "having thoughts about suicide, but does not have a plan." (TR. 3315). At this time, Ms. Squire also noted that Plaintiff was reporting "significant levels of anxiety" and "minimal improvement." (TR. 3317).

From December 29, 2021 through January 20, 2022, Plaintiff again reported "no" changes in her thought processes. (TR. 3318-3321). And as noted by the ALJ, on January

4, 2022, Plaintiff reported "feeling overwhelmed and tired from eating and not wanting to do it." (TR. 3322). On January 31, 2022, Plaintiff reported "no progress toward goals" and on February 3, 2022, Plaintiff reported "her mood and lack of motivation for improvement is unchanged." (TR. 3324). On February 7, 2022, Plaintiff reported that she had not planned to commit suicide but she had self-harmed. (TR. 3325). On February 10, 2022, Plaintiff reported "significant suicidal ideation," which would obviously align with "intrusive thoughts." (TR. 3327). Plaintiff reported overall improvement from late February through late June,[3] but on June 22, 2022, she again began reporting "significant levels of anxiety." (TR. 3349). On September 8, 2022, Plaintiff reported "increase in anxiety and having a hard time sleeping." (TR. 3359). On October 6, 2022, Plaintiff reported "increasing thoughts about self-harm." (TR. 3363).

In addition to Ms. Squire's first opinion, the ALJ did not offer an explanation of why he believed Ms. Squire's records did not support her findings concerning Plaintiff becoming overwhelmed in social situations. *See* TR. 25-26; 3269. On November 11, 2022, Ms. Squire noted that Plaintiff had reported anxiety about being around her family for the holidays and on January 3, 2022, Plaintiff reported having "poor boundaries with most family members." (TR. 3368, 3374). On November 30, 2023, Plaintiff reported "prioritizing her family's safety and . . . not planning on being around a lot of people over [the] holidays." (TR. 3416). On this note, on January 25, 2024, Plaintiff reported a high level of anxiety associated with her daughter's upcoming birthday party, which presumably would involve being around other people in a social situation. (TR. 3423).

---

[3] TR. 3333-3348.

In sum, the Court finds that again, although facially, the ALJ provided rationales in support of rejecting Ms. Squire's opinions as not supported by her own records, but a review of those records reveals that the ALJ's rationales lacked substantial evidence. *See supra*. As a result, remand is appropriate. *See supra*.

### D. Summary

The Court finds that the ALJ erred in his evaluation of significantly probative evidence related to Plaintiff's mental health as opined by Ms. Squire. The ALJ provided facially valid reasons for rejecting the opinions, but his rationales were not supported by substantial evidence, as discussed above.

### VI. PLAINTIFF'S REMAINING ALLEGATIONS OF ERROR

The Court declines to consider Plaintiff's remaining allegations of error, as they may be affected "by the ALJ's treatment of [the] case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on February 19, 2026.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE